Argued and submitted May 14; resubmited In Banc
September 8, affirmed October 13, 1982

STATE OF OREGON,
*Respondent,*

*v.*

ALEX A. RENTERIA,
*Appellant.*

(C 81-06-32739; CA A22499)

651 P2d 1362

Michael T. Garone, Portland, argued the cause for appellant. On the brief was Robert A. Sacks, Portland.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

BUTTLER, J.

Warren, J., dissenting.

**BUTTLER, J.**

In this proceeding under the Habitual Traffic Offenders Act, ORS 484.700 - 484.750, defendant appeals from the trial court's order declaring him to be a habitual traffic offender. He was convicted of driving under the influence of intoxicants on April 18, 1977, and of the same crime on September 20, 1977; on June 8, 1978, he was convicted of driving while suspended. On June 4, 1981, a complaint seeking to declare him a habitual traffic offender was filed. Because more than two years had expired between defendant's last conviction and the filing of the complaint in this proceeding, defendant contended that the two-year limitation period provided by ORS 12.110(2)[1] was a bar to this action. The trial court held that the action was not barred, and the sole question on appeal is whether the trial court erred in that ruling.

After the trial of this case, this court held in *State v. Norton,* 57 Or App 679, 646 P2d 53 (1982), with one judge dissenting, that the two-year limitation in ORS 12.110(2) was applicable, because the Habitual Traffic Offenders Act imposed either a "penalty" or a "forfeiture." A majority of the court, sitting in banc, now concludes that *Norton* was decided wrongly; it is overruled.

■    Reading the Act as a whole makes it clear that its function is to determine the status of one who fits the statutory definition of a habitual offender. Once a driver has been judicially determined to have that status, his right to operate motor vehicles in this state is suspended for ten years, but is subject to the control and supervision of the Department of Motor Vehicles. ORS 484.735 provides in relevant part:

"(2)   A one-year, renewable probationary license may be issued to a habitual offender if he:

"(a)   Successfully completes a defensive driving course conducted by the division;

"(b)   Continually satisfies the conditions of the probationary license; and

---

[1] ORS 12.110(2) provides:

"(2) An action upon a statute for a forfeiture or penalty to the state or county shall be commenced within two years."

"(c) Submits a report of a diagnostic examination conducted by a private physician showing to the satisfaction of the State Health Officer that he is physically and mentally competent to drive.

"(3) The conditions of a probationary license shall include that if a habitual offender is convicted of more than one moving violation within any 12-month period the probationary license shall be revoked and may not be reinstated for one year from the date of last conviction.

"(4) The division may establish by rule additional conditions of a probationary license."

Although the status of habitual offender imposes severe restrictions on the offender's right to drive an automobile, those restrictions do not amount to a forfeiture. It may well be, as appears to be the case here, that the offender's driver's license has already been suspended at the time his status as a habitual offender is determined. Here, the defendant's third conviction within the relevant five-year period was for driving with a suspended operator's license, so it is particularly difficult to consider that this defendant "forfeited" his license as a result of this proceeding. ORS 484.730 requires that after a determination that the driver is a habitual offender, he surrender to the court all licenses or permits to operate a motor vehicle on the highways of this state. Here, it appears that defendant had none to surrender.

It is equally difficult to characterize this proceeding as an action for a penalty. The Act does not provide a fine or imprisonment as a result of a determination that the driver is a habitual offender:

"* * * The Act is not intended to punish habitual offenders; there is no such crime as being a habitual offender. The purpose of the Act is to protect the public. * * *" *State v. Wells,* 27 Or App 537, 540, 556 P2d 727 (1976).

The majority in *Norton,* in concluding that the legislature intended *some* statute of limitations to apply to proceedings under the Act, emphasized the provisions of

ORS 484.715[2] and 484.720,[3] both of which indicate that prompt action be taken at different stages in the enforcement of the Act. However, ORS 484.715 requires prompt action by DMV when it receives an abstract of the second conviction described in ORS 484.705(1)(a) to notify the licensee and to offer the licensee an opportunity to meet with a representative of the division, with two purposes in mind: (1) to make sure the licensee is aware of the Act so that he will be aware of the consequences which may flow from an additional serious traffic offense, and (2) to advise the licensee of the availability of educational programs for driver improvement. It is apparent that the purpose of that statutory requirement is to obviate the necessity of proceeding against the driver as a habitual offender. The Act requires that the notice be given, but it does not require that the licensee accept the invitation to meet with a representative of DMV. That section has nothing to do with the time within which a proceeding must be commenced if the licensee is convicted of the third offense.

---

[2] ORS 484.715 provides in pertinent part:

"(1) When the division receives an abstract of the conviction or bail forfeiture, under ORS 153.625, and the conviction or bail forfeiture is the second one of those described by ORS 484.705(1)(a) for the convicted person, the division immediately shall notify the licensee and offer the licensee any opportunity of an advisory meeting with a representative of the division.

"(2) If the licensee requests a meeting under subsection (1) of this section, the meeting shall be held in the county wherein the licensee resides. At the meeting, the division shall advise the licensee of the provisions of ORS 484.700 to 484.750 and of the availability of educational programs for driver improvement."

[3] ORS 484.720 provides:

"(1) The administrator of the division shall certify in triplicate an abstract of the operating record as maintained by the division, of a habitual offender to the district attorney of the county in which the person resides, as his residence is shown by the records of the division. If the person is not a resident of this state, the record shall be certified to the Attorney General. The certified abstract may be admitted in evidence and shall be prima facie evidence that the person named therein was duly convicted of each offense shown by the abstract. If such person denies any of the facts as stated therein, he shall have the burden of proving that the fact is untrue.

"(2) The district attorney upon receiving the abstract shall forthwith file a complaint against the person named therein in the circuit court for the county in which such person resides, charging him with being a habitual offender. If the person is a nonresident of this state, the Attorney General shall file such complaint in the Circuit Court for Marion County."

The prompt action required by ORS 484.720 applies to the district attorney after he receives the abstract of the driving record of the alleged offender from DMV. Subsection (2) of that statute requires the district attorney to file a complaint under the Act "forthwith." However, there is no such requirement in subsection (1) of that statute with respect to DMV. Perhaps there should be, but there is not. This case involves the delay of DMV in transmitting the abstract to the district attorney. There is no contention that the district attorney did not proceed "forthwith" after receiving it.

■    Whether the legislature intended not to have a period of limitation applicable to proceedings under the Act, or whether the absence of such a limitation period is an oversight, is not so clear as the majority in *Norton* assumed. Under ORS 484.730,[4] there are only two bases on which the court may dismiss the proceedings: (1) if the person before the court is not the person named in the abstract, or (2) if he is not a habitual offender. There is nothing authorizing the court to dismiss for failure to commence the proceedings within a specified time or within a reasonable time.

If the failure to include a period of limitations within which proceedings under the Act must be commenced is a legislative oversight, we should leave it to the legislature to fill that void. Certainly, it is inappropriate to make a judicial determination that proceedings under the Act are either penal or effect a forfeiture, or both, in order to impose what we think is a reasonable limitation period.[5]

---

[4] ORS 484.730 provides:

"If the court finds that the person before the court is not the person named in the abstract, or that he is not a habitual offender, the proceeding shall be dismissed; but if the court finds that the person before the court is the person named in the abstract and that the person is a habitual offender, the court shall so find and by appropriate order direct the person not to operate a motor vehicle on the highways of this state and to surrender to the court all licenses or permits to operate a motor vehicle on the highways of this state for disposal in accordance with ORS 482.470. The clerk of the court shall file with the division a copy of the order whereupon the division shall forthwith revoke the license of the person to operate motor vehicles."

[5] Notwithstanding the absence of an express limitation period in the Act, there may be circumstances under which the court may determine that it would not effectuate the purposes of the Act to determine that the driver is a habitual

To date, such proceedings have been treated as civil proceedings, *see State v. Wells, supra;* to hold that they are penal in nature in order to impose a two-year statute of limitations may be a case where the medicament is worse than the disease. *See Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977).

Affirmed.

**WARREN, J.,** dissenting.

I dissent for the reasons stated in my opinion in *State v. Norton,* 57 Or App 679, 646 P2d 53 (1982). Warden, Judge, and Rossman, Judge, join in this dissent.

---

offender, because the driver, for a period of more than ten years, for example, after his last conviction has not demonstrated his indifference to the safety and welfare of others and his disrespect for the laws of the state. ORS 484.710(2). That question, however, is not before us here.