## Alexandria

## HAROLD ROLLINS MOFFITT

### v.

## COMMONWEALTH OF VIRGINIA

No. 0332-92-4

Decided August 31, 1993

984

COUNSEL

John R. Prosser (Prosser, Parthemos & Bryant, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Harold Rollins Moffitt was adjudged to be an habitual offender by the Circuit Court of Frederick County in accordance with Code § 46.2-351. Moffitt appeals on the ground that the evidence was insufficient to prove that he had the requisite three convictions to constitute him an habitual offender. Specifically, Moffitt contends that the evidence does not support the trial judge's finding that he is the "Harold R. Moffitt" who was convicted on November 19, 1986, in Romney, West Virginia, of driving on a revoked or suspended license. We hold that the Commonwealth introduced *prima facie* evidence that the appellant, Harold Rollins Moffitt, was the same person as the "Harold R. Moffitt" who the Virginia Department of Motor Vehicle's (DMV) records showed had been convicted of driving with a revoked or suspended license in Romney, West Virginia. Because the trial judge found that Moffitt's evidence failed to rebut the *prima facie* presumption that he had been duly convicted, the evidence was sufficient to support the trial court's adjudication of Moffitt as an habitual offender. Accordingly, we uphold the trial court's ruling.

Moffitt does not question that the DMV's transcript and abstracts that were introduced as evidence of his driving convictions were sufficient to prove that he had been convicted on March 3, 1988, for having driven with a revoked license on December 25, 1986, and on November 21, 1990, for having driven while under the influence of intoxicants or drugs on September 29, 1990, two of the requisite convictions for being an habitual offender. However, as to the November 19, 1986 conviction for driving revoked or suspended in Romney,

West Virginia, on September 11, 1986, he contends that the evidence that he introduced at the show cause hearing rebutted, as a matter of law, the Commonwealth's *prima facie* showing "that [he was] the person named therein [who] was duly convicted." Code § 46.2-352.

As required by Code § 46.2-353, the Commonwealth filed an information accompanied by a DMV certificate and transcript of Moffitt's driving record. Based on that information, the Circuit Court of Frederick County entered a show cause order pursuant to Code § 46.2-354. Moffitt was served with a copy of the order, together with the transcript or abstract, directing him to appear and to show cause why he should not be declared an habitual offender. At the show cause hearing, the Commonwealth introduced the DMV certificate authenticating the transcript, and the transcript of Moffitt's driving record, which included the November 19, 1986 West Virginia conviction for driving revoked or suspended on September 11, 1986.

The Commonwealth also introduced a photocopy of the Uniform Traffic Ticket and Complaint issued on September 11, 1986, to "Harold R. Moffitt" for driving while suspended in Romney, West Virginia. The traffic ticket bore a barely legible signature of "Harold Moffitt" and the signature of the issuing officer. In addition, the copy of the traffic ticket contained personal information about the driver that corresponded to the description of Moffitt, including his age, race, height, weight, eye color, and social security number. The traffic ticket also showed that the operator was driving a red 1978 Ford owned by "Godfrey VW" of Winchester, Virginia, the same vehicle that Moffitt says he had sold about that time. The Commonwealth also introduced a photocopy of the abstract of judgment from Romney, West Virginia, showing that "Harold R. Moffitt" forfeited bail of $100 on November 19, 1986, on the charge of "Driving Suspended."

Moffitt presented evidence to contest the Commonwealth's assertion and proof that he was the person or the "Harold R. Moffitt" who had been convicted of "Driving Suspended" in Romney, West Virginia. Moffitt's rebuttal evidence consisted of his testimony that he was not the person who had been charged and convicted in West Virginia of the September 11, 1986 driving suspended offense. He stated that the signature on the traffic ticket was not his. He testified that he could not have had a conviction for driving suspended because his operator's license had not been suspended or revoked in either Virginia or West Virginia. To substantiate this claim, Moffitt pointed

to the fact that the Virginia DMV transcript did not show that his license had been revoked or suspended in Virginia on or before September 11, 1986. A letter from a West Virginia Department of Motor Vehicle's official was introduced without objection. The letter asserted that West Virginia had no record of Moffitt's operator's license or privilege to drive ever having been revoked or suspended in West Virginia. As an explanation for the Romney, West Virginia conviction appearing on Moffitt's DMV transcript from Virginia and the West Virginia traffic ticket containing his physical description, Moffitt postulated that, because he had sold his 1978 Ford sometime around September 11, 1986, someone with a suspended license must have been driving his car and, when stopped by the police officer in Romney, must have used Moffitt's car registration that had been left in the vehicle.

The trial judge ruled that Moffitt had failed to rebut the Commonwealth's *prima facie* proof that he had the requisite convictions to be declared an habitual offender and failed to show cause why he should not be so declared.

Habitual offender proceedings are civil in nature, not criminal. *Shope v. Commonwealth*, 228 Va. 203, 205, 321 S.E.2d 282, 283 (1984); *Bouldin v. Commonwealth*, 4 Va. App. 166, 169, 355 S.E.2d 352, 354 (1987). Therefore, the Commonwealth has the burden of proving by a preponderance of the evidence that the respondent had obtained the three requisite driving convictions to be an habitual offender. *Id.* As to the challenged West Virginia conviction for "Driving Suspended," the Commonwealth established a *prima facie* presumption that it was a valid conviction by introducing the certified DMV transcript listing the three requisite convictions against Harold R. Moffitt, including the one from West Virginia. *See* Code § 46.2-352. The DMV transcript identified Moffitt by name and by his social security number. The *prima facie* presumption that the convictions were valid necessarily encompasses that the elements of the charges were proven, which included proof that the respondent is the person who was convicted and that the evidence proved that he was suspended or revoked. *Davis v. Commonwealth*, 219 Va. 808, 813, 252 S.E.2d 299, 302 (1979). Once the Commonwealth has established a *prima facie* case, it is entitled to judgment, unless the respondent goes forward with evidence that refutes an element of the Commonwealth's case or rebuts the *prima facie* presumption.

*Commonwealth v. Dalton*, 11 Va. App. 620, 624, 400 S.E.2d 801, 803 (1991).

■ "*Prima facie* evidence is evidence which on its first appearance is sufficient to raise a presumption of fact or establish the fact in question unless rebutted. It imports that the evidence produces for the time being a certain result, but that the result may be repelled." *Babbitt v. Miller*, 192 Va. 372, 379-80, 64 S.E.2d 718, 722 (1951). Although a respondent may present evidence that tends to rebut or refute the *prima facie* presumption of law that the convictions are valid, nevertheless, that evidence must be weighed by the trier of fact to determine whether it overcomes the presumption. *See* Charles E. Friend, *The Law of Evidence in Virginia* §§ 92 and 94 (3d ed. 1988); *see also* 5 A.L.R.3d § 7 (evidence required to overcome presumption created by statute). Thus, a respondent will be adjudicated an habitual offender unless he goes forward with evidence to refute the presumption that an essential fact proven by the DMV transcript is true. Code § 46.2-352; *Davis*, 219 Va. at 812, 252 S.E.2d at 302.

In Moffitt's case, the Commonwealth introduced his certified DMV transcript and abstract of convictions, which were *prima facie* proof that Moffitt had the three requisite driving convictions to be an habitual offender. In addition, the Commonwealth went beyond establishing bare *prima facie* proof that the "Harold R. Moffitt" who was convicted of driving suspended or revoked in Romney, West Virginia, was the same Harold Rollins Moffitt who is the respondent. The Commonwealth introduced a photocopy of the West Virginia traffic ticket bearing Moffitt's social security number, an accurate physical description of him, and a signature of "Harold Moffitt." Not only was the Commonwealth entitled to the *prima facie* presumption that the conviction was valid, which includes the presumption that Moffitt was the same person who had been convicted in West Virginia and that he operated a motor vehicle while his license was revoked or suspended, but the Commonwealth introduced evidence from which the fact finder could conclude that the charging officer had obtained personal data about the operator that corresponded with the personal description of and data about the respondent, Harold Rollins Moffitt.

■ The question is whether Moffitt went forward with evidence that as a matter of law rebutted the Commonwealth's *prima facie* case. Moffitt presented evidence attempting to prove that the West Virginia conviction was not against him. The trial judge was not persuaded, however, and found that Moffitt did not rebut the Commonwealth's

*prima facie* presumption. It is within the province of the fact finder to evaluate the credibility of the witnesses and weight of the evidence. The determination that a party's evidence is not credible or not sufficiently persuasive to overcome the *prima facie* presumption will not be overturned on appeal unless clearly wrong or unsupported by the record. Code § 8.01-680.

Moffitt explained that he was not the operator and that someone other than he, who was apparently using his vehicle registration, was charged and convicted of the September 11, 1986 offense in Romney, West Virginia. First, a Virginia vehicle registration does not contain a personal description of the owner of the vehicle. If an operator had used the vehicle registration as his identification, it is highly unlikely that he would have the same physical characteristics as Moffitt and, of course, he could not have had the same social security number. Thus, Moffitt's effort to explain how the charging officer could have obtained his name is not credible. Also, because the traffic ticket showed that the charging officer knew that the operator of the vehicle and registered owner, ''Godfrey VW,'' were not the same, it is unlikely that the officer would have relied upon information from an old vehicle registration to identify the operator.

In addition, Moffitt contends that his letter from the West Virginia DMV and the Virginia DMV transcript showed that he was not, in fact, revoked in either of those states on September 11, 1986; therefore, he argues, it is unlikely that he was the operator of the vehicle because he would have had a valid license at the time and would not have forfeited bail on the charge. Moffitt's letter from the West Virginia Department of Motor Vehicles stating that he was not revoked or suspended at the time in West Virginia is of little consequence because the ticket had been issued based on a suspended or revoked Virginia license, not a West Virginia license. The fact that the revocation did not occur in West Virginia does not rebut the Commonwealth's *prima facie* case. While the Virginia DMV transcript did not reflect an administrative suspension or revocation by the DMV, Moffitt's license or privilege to drive may have been judicially revoked in Virginia, even though the Virginia DMV records do not so reflect. *See* Code §§ 46.2-392 and 46.2-398. In fact, the Virginia DMV transcript shows that one of the convictions that Moffitt does not challenge was for ''Drive in Viol. 46.1-350'' (driving revoked or suspended) in Frederick County, Virginia, on ''12/25/86,'' only three months after the West Virginia conviction for ''Driving Suspended.''

As Moffitt has pointed out in regard to the West Virginia conviction, the Virginia DMV transcript did not show him revoked or suspended prior to "12/25/86" or prior to September 11, 1986. Nevertheless, the Commonwealth established a *prima facie* presumption that the West Virginia conviction was valid. The fact that the Virginia DMV abstract did not show him to have been revoked or suspended did not establish that he was not the "Harold R. Moffitt" convicted in West Virginia because he had not been revoked or suspended.

Based on the evidence in the record, the trial judge's determination that Moffitt did not satisfactorily rebut the Commonwealth's *prima facie* evidence of his three convictions is supported by credible evidence. Accordingly, we uphold the court's adjudication of Moffitt as an habitual offender under Code § 46.2-351.

*Affirmed.*

Barrow, J., concurred.

Benton, J., dissenting.

Code § 46.2-352 states in pertinent part:

The transcript or abstract shall be prima facie evidence that the person named therein was duly convicted . . . by the court wherein the conviction . . . was made, of each offense shown by the transcript or abstract. If the person denies any of the facts as stated therein, he shall have the burden of proving that the fact is untrue.

"*Prima facie* evidence is evidence which on its first appearance is sufficient to . . . establish the fact in question unless rebutted. It imports that the evidence produces for the time being a certain result, but that the result may be repelled." *Babbitt v. Miller*, 192 Va. 372, 379-80, 64 S.E.2d 718, 722 (1951).

The Commonwealth's evidence before the trial judge established that on September 11, 1986, a West Virginia police officer issued a traffic ticket for driving on a suspended license to Harold R. Moffitt, who resided at Lot 21 in Shanks, West Virginia. At trial, Harold Rollins Moffitt contested that he was the same "Harold R. Moffitt" who was charged and convicted in West Virginia for "driving while suspended."

Moffitt testified at trial and denied that he had received the ticket and that the signature on the ticket was his. The evidence proved that Moffitt resided on Route 2 in Winchester, Virginia. No evidence proved that Moffitt ever lived at Lot 21, Shanks, West Virginia. No evidence proved that the signature on the summons was Moffitt's. Moreover, Moffitt produced as evidence at trial a letter from the West Virginia Division of Motor Vehicles stating that the division had "reviewed [its] records and cannot find any evidence of a suspension or revocation against your driving privilege in West Virginia." The Virginia Division of Motor Vehicles records in evidence before the trial judge also established that on September 11, 1986, the date the West Virginia ticket was issued, Moffitt's license had not been suspended or revoked in Virginia.

The majority asserts that Moffitt *may* have had his license suspended by a trial court in Virginia pursuant to Code § 46.2-392. The record, however, contains no proof that any such suspension had occurred. Moreover, if Moffitt's license had been so suspended, presumably it would have been in the possession of the court that suspended it or the Division of Motor Vehicles. *See* Code § 46.2-392.

The evidence before the trial judge was sufficient to negate the truth of the assertion that the conviction of "Harold R. Moffitt" in West Virginia was of the same Moffitt being tried. Following Moffitt's evidence, the record before the trial judge did not prove by a preponderance of the evidence that the person who was stopped and given a summons for driving on a suspended license was the same Harold Rollins Moffitt who was before the trial judge. Accordingly, I would hold that the evidence proved at trial rebutted the Commonwealth's *prima facie* evidence.